**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **KATHRYN GREEN (Individually** | § | |
| **and as Representative of the Estate of** | § | |
| **PATRICK GREEN, Deceased),** | § | |
| **DAVID GREEN,** | § | |
| *Plaintiffs*, | § | |
| | § | **CIVIL ACTION NO. 4:17-cv-905** |
| **V.** | § | |
| | § | **JURY TRIAL DEMANDED** |
| **FORMER HARRIS COUNTY SHERIFF** | § | |
| **ADRIAN GARCIA,** | § | |
| **HARRIS COUNTY DETENTION** | § | |
| **OFFICER WARNER DEAN ERVIN IN** | § | |
| **HIS INDIVIDUAL CAPACITY,** | § | |
| **HARRIS COUNTY DETENTION** | § | |
| **OFFICER MICHAEL JAMES MALLOY** | § | |
| **IN HIS INDIVIDUAL CAPACITY,** | § | |
| **HARRIS COUNTY DETENTION** | § | |
| **OFFICER JENNIFER WAGNER IN HER** | § | |
| **INDIVIDUAL CAPACITY,** | § | |
| **HARRIS COUNTY DETENTION** | § | |
| **OFFICER MARIA RODRIGUEZ IN HER** | § | |
| **INDIVIDUAL CAPACITY,** | § | |
| **HARRIS COUNTY DETENTION** | § | |
| **OFFICER MARTINEZ IN HIS** | § | |
| **INDIVIDUAL CAPACITY,** | § | |
| **HARRIS COUNTY DETENTION** | § | |
| **OFFICER JOSE M. SANCHEZ IN HIS** | § | |
| **INDIVIDUAL CAPACITY,** | § | |
| **HARRIS COUNTY DETENTION** | § | |
| **OFFICER C. C. MALTEZ IN HIS** | § | |
| **INDIVIDUAL CAPACITY,** | § | |
| **DETENTION OFFICER M. VELA IN HIS** | § | |
| **INDIVIDUAL CAPACITY,** | § | |
| **MICHAEL SEALE, M.D.,** | § | |
| **INDIVIDUALLY,** | § | |
| **MARCUS GUICE, M.D., INDIVIDUALLY,** | § | |
| **BOBBY DAVIS, INDIVIDUALLY,** | § | |
| **JOHN M. LU, M.D., INDIVIDUALLY,** | § | |
| **MICHELE JOHNSON, LVN a/k/a** | § | |
| **MICHELLE WILLIAMSON, LVN,** | § | |
| **INDIVIDUALLY,** | § | |

1

AMARACHI CHUKWU (A/K/A          §
AMARACHI UKABAM), LVN,           §
INDIVIDUALLY,                    §
MARLO KELLY, R.N., INDIVIDUALLY, §
GREGORY BURKHALTER, R.N.,        §
INDIVIDUALLY,                    §
TIFFANY MOSES, LVN,              §
INDIVIDUALLY,                    §
CHERYL KOEHLER, LVN,             §
INDIVIDUALLY,                    §
RACHEL SANGSTER, RT,             §
INDIVIDUALLY,                    §
MELISSA HALEY, LVN,              §
INDIVIDUALLY,                    §
JAMAR BAILEY, LVN, INDIVIDUALLY, §
STAFF CARE, INC., A WHOLLY       §
OWNED SUBSIDARY OF AMN           §
HEALTHCARE SERVICES, and         §
UNKNOWN NURSE, INDIVIDUALLY      §
    *Defendants.*

# <u>COMPLAINT</u>

NOW COME KATHRYN GREEN, INDIVIDUALLY AND AS REPRESENTATIVE OF THE ESTATE OF PATRICK GREEN, DECEASED, and DAVID GREEN by and through undersigned counsel, and makes this Complaint against Defendants, FORMER HARRIS COUNTY SHERIFF ADRIAN GARCIA, HARRIS COUNTY DETENTION OFFICER WARNER DEAN ERVIN IN HIS INDIVIDUAL CAPACITY, HARRIS COUNTY DETENTION OFFICER MICHAEL JAMES MALLOY IN HIS INDIVIDUAL CAPACITY, HARRIS COUNTY DETENTION OFFICER JENNIFER WAGNER IN HER INDIVIDUAL CAPACITY, HARRIS COUNTY DETENTION OFFICER MARIA RODRIGUEZ IN HER INDIVIDUAL CAPACITY, HARRIS

COUNTY DETENTION OFFICER MARTINEZ IN HIS INDIVIDUAL CAPACITY, HARRIS COUNTY DETENTION OFFICER JOSE M. SANCHEZ IN HIS INDIVIDUAL CAPACITY, HARRIS COUNTY DETENTION OFFICER C. MALTEZ IN HIS INDIVIDUAL CAPACITY, HARRIS COUNTY DETENTION OFFICER M. VELA IN HIS INDIVIDUAL CAPACITY, MICHAEL SEALE, M.D., IN HIS INDIVIDUAL CAPACITY, MARCUS GUICE, M.D., IN HIS INDIVIDUAL CAPACITY, BOBBY DAVIS, IN HIS INDIVIDUAL CAPACITY, JOHN M. LU, M.D., IN HIS INDIVIDUAL CAPACITY AND AS AN AGENT FOR DEFENDANT STAFF CARE, INC. A WHOLLY OWNED SUBSIDIARY OF AMN HEALTHCARE SERVICES, MICHELE JOHNSON, LVN A/K/A MICHELE WILLIAMSON, LVN, IN HER INDIVIDUAL CAPACITY, AMARACHI CHUKWU (A/K/A AMARACHI UKABAM), LVN, IN HER INDIVIDUAL CAPACITY, MARLO KELLY, R.N., IN HIS INDIVIDUAL CAPACITY, GREGORY BURKHALTER, R.N., IN HIS INDIVIDUAL CAPACITY, TIFFANY MOSES, LVN, IN HER INDIVIDUAL CAPACITY, CHERYL KOEHLER, LVN, IN HER INDIVIDUAL CAPACITY, RACHEL SANGSTER, RT, IN HER INDIVIDUAL CAPACITY, MELISSA HALEY, LVN, IN HER INDIVIDUAL CAPACITY AND JAMAR BAILEY, LVN, IN HER INDIVIDUAL CAPACITY, STAFF CARE, INC., A WHOLLY

OWNED SUBSIDIARY OF AMN HEALTHCARE SERVICES and UNKNOWN NURSE, INDIVIDUALLY and allege as follows:

## INTRODUCTION

1.   This is a civil rights action for Constitutional violations and state law personal injuries suffered by Plaintiffs KATHRYN GREEN, INDIVIDUALLY AND AS REPRESENTATIVE OF THE ESTATE OF PATRICK GREEN, DECEASED, and DAVID GREEN ("Plaintiffs") as a result of personal injuries and wrongful death of Plaintiffs' decedent, Patrick Green ("Patrick Green" and/or "Decedent").  Plaintiffs bring this action for compensatory damages under 28 U.S.C. §§ 1331 and 1343, 42 U.S.C. §§1983 and 1988 because Defendants jointly and severally deprived Decedent Patrick Green of his federally protected rights, privileges and immunities.

2.   Plaintiffs are the parents of and Kathryn Green is the personal representative of the Estate of Patrick Green and they also bring this action, against Former Harris County Sheriff Adrian Garcia, Harris County Detention Officer Warner Dean Ervin in his Individual Capacity, Harris County Detention Officer Michael James Malloy in his Individual Capacity, Harris County Detention Officer Jennifer Wagner in her Individual Capacity, Harris County Detention Officer Maria Rodriguez in her Individual Capacity,

4

Harris County Detention Officer Martinez in his Individual Capacity, Harris County Detention Officer Jose M. Sanchez in his Individual Capacity, Harris County Detention Officer C. Maltez in his Individual Capacity, Harris County Detention Officer M. Vela in his Individual Capacity, Michael Seale, M.D., in his Individual Capacity, Marcus Guice, M.D., in his Individual Capacity, Bobby Davis, in his Individual Capacity, John M. Lu, M.D., in his Individual Capacity and as an agent for Staff Care, Inc., a wholly owned subsidiary of AMN Healthcare Services, Michele Johnson, LVN a/k/a Michele Williamson, LVN, in her Individual Capacity, Amarachi Chukwu (a/k/a Amarachi Ukabam), LVN, in her Individual Capacity, Marlo Kelly, R.N., in his Individual Capacity, Gregory Burkhalter, R.N., in his Individual Capacity, Tiffany Moses, LVN, in her Individual Capacity, Cheryl Koehler, LVN, in her Individual Capacity, Rachel Sangster, RT, in her Individual Capacity, Melissa Haley, LVN, in her Individual Capacity, Jamar Bailey, LVN, in his Individual Capacity, Staff Care, Inc., a wholly owned subsidiary of AMN Healthcare Services and Unknown Nurse, Individually pursuant to Tex. Civ. Prac. & Rem. Code §71.000 et. seq. and as applied through 42 U.S.C. §1983 and §1988.  At the time of his death on March 24, 2015, the day before his 28th birthday, Patrick Green was unmarried with no children. He died intestate with no assets.  Plaintiffs bring this action as the surviving

5

family and sole heirs at law of their Decedent, and as the only persons entitled to recover damages because of Decedent's wrongful death. Tex. Civ. Prac. & Rem. Code §71.000 et. seq. and as applied through 42 U.S.C. §1983 and §1988.

## JURISDICTION AND VENUE

3.    This Court has jurisdiction over the federal claims of the Plaintiffs in this action, under 28 U.S.C. §§ 1331 and 1343, 42 U.S.C §§1983 and 1988, and supplemental jurisdiction under 28 U.S.C. § 1367(a), to hear Plaintiffs' state law claims, if any.

4.    Venue is proper in this Court pursuant to 28 USC §1391(b) as all material facts out of which this suit arises occurred within the Southern District of Texas, Houston Division.

## PARTIES

5.    Patrick Green, Decedent, when alive, was a resident of Harris County, Texas and was at the pertinent times to this claim in the custody of the Harris County Sheriff's Department and the confines of the Harris County Jail.

6.    Plaintiff, Kathryn Green, is a resident of Fort Bend County, Texas.

7.    Plaintiff, David Green, is a resident of Fort Bend County, Texas.

8.      Defendant Adrian Garcia is the former Sheriff of Harris County, Texas.  He may be served with process at the Harris County Sheriff's Office, 1200 Baker Street, Houston, Texas 77002 or wherever he is found.

9.      Defendant Warner Dean Ervin is an employee of Harris County, Texas.  He may be served with process at the Harris County Sheriff's Office, 1200 Baker Street, Houston, Texas 77002 or wherever he is found.

10.     Defendant Michael James Malloy is an employee of Harris County, Texas. He may be served with process at the Harris County Sheriff's Office, 1200 Baker Street, Houston, Texas 77002  or wherever he is found.

11.     Defendant Jennifer Wagner is an employee of Harris County, Texas.  She may be served with process at the Harris County Sheriff's Office, 1200 Baker Street, Houston, Texas 77002 or wherever she is found.

12.     Defendant Maria Rodriguez is an employee of Harris County, Texas.  She may be served with process at the Harris County Sheriff's Office, 1200 Baker Street, Houston, Texas 77002 or wherever she is found.

13.     Defendant Martinez is an employee of Harris County, Texas.  He may be served with process at the Harris County Sheriff's Office, 1200 Baker Street, Houston, Texas 77002 or wherever he is found.

14.     Defendant Jose M. Sanchez is an employee of Harris County, Texas.  He may be served with process at the Harris County Sheriff's Office, 1200 Baker Street, Houston, Texas 77002 or wherever he is found.

15.     Defendant C. Maltez is an employee of Harris County, Texas.  He may be served with process at the Harris County Sheriff's Office, 1200 Baker Street, Houston, Texas 77002 or wherever he is found.

16.     Defendant M. Vela is an employee of Harris County, Texas.  He may be served with process at the Harris County Sheriff's Office, 1200 Baker Street, Houston, Texas 77002 or wherever he is found

17.     Defendant Michael Seale, M.D., is a former employee of Harris County, Texas.  He may be served  at 21511 NE Interlachen Lane, Fairview, Oregon 97024 or wherever he is found.

18.     Defendant Marcus Guice, M.D. is an employee of Harris County, Texas.  He may be served with process at the Harris County Sheriff's Office, 1200 Baker Street, Houston, Texas 77002 or wherever he is found.

19.     Bobby Davis, is a former employee of Harris County, Texas.  He may be served with process at 2714 Hazy Creek Drive, Houston, Texas 77084 or wherever he is found.

20.   John M. Lu, M.D., is an employee of Harris County, Texas.  He may be served with process at the Harris County Sheriff's Office, 1200 Baker Street, Houston, Texas 77002 or wherever he is found.

21.   Michele Johnson, L.V.N. a/k/a Michele Williamson, L.V.N., is an employee of Harris County, Texas.  She may be served with process at the Harris County Sheriff's Office, 1200 Baker Street, Houston, Texas 77002 or wherever she is found.

22.   Amarachi Chukwu (a/k/a Amarachi Ukabam), LVN, is an employee of Harris County, Texas.  She may be served with process at the Harris County Sheriff's Office, 1200 Baker Street, Houston, Texas 77002 or wherever she is found.

23.   Marlo Kelly, R.N., is an employee of Harris County, Texas.  She may be served with process at the Harris County Sheriff's Office or wherever she is found.

24.   Gregory Burkhalter, R.N., is a former employee of Harris County, Texas.  He may be served with process at 217 Chariss Glen Drive, league City, Texas 77573 or wherever he is found.

25.   Tiffany Moses, LVN, is an employee of Harris County, Texas.  She may be served with process at the Harris County Sheriff's Office, 1200 Baker Street, Houston, Texas 77002 or wherever she is found.

26.     Cheryl Koehler, LVN, is an employee of Harris County, Texas.  She may be
        served with process at the Harris County Sheriff's Office, 1200 Baker Street,
        Houston, Texas 77002 or wherever she is found.

27.     Rachel Sangster, RT, is an employee of Harris County, Texas.  She may be
        served with process at the Harris County Sheriff's Office, 1200 Baker Street,
        Houston, Texas 77002 or wherever she is found.

28.     Melissa Haley, LVN, at all relevant and material times was an employee of
        Harris County, Texas.  She may be served with process at 5724 ½ Parwill
        Street, Houston, Texas 77087 or 2306 W Adrian St., Harlingen, Texas
        78552 or wherever she is found.

29.     Jamar Bailey, LVN, is an employee of Harris County, Texas.  She may be
        served with process at the Harris County Sheriff's Office, 1200 Baker Street,
        Houston, Texas 77002 or wherever he is found.

30.     Defendant Staff Care, Inc., a wholly-owned subsidiary of AMN Healthcare,
        Inc. is a Delaware Corporation doing business in Texas and can be served
        through its registered agent for service, Corporation Service Company d/b/a
        CSC – Lawyers Incorporation Service Company, 211 E. 7th Street, Suite
        620, Austin, Texas  78701.

31.     Unknown Nurse, Individually, is a nurse who is mentioned as having
        transmitted information regarding Patrick Green to EMS at the Harris

County Jail, but is not identified in the records produced by Harris County or any other medical provider.  It is believed that this nurse is among the nurses otherwise individually named above, but in an abundance of caution, is listed here separately.

### FACTS

32.   **Harris County**: Harris County, Texas is a county in the State of Texas and its county seat is Houston, Texas.  Harris County, Texas, through its elected and appointed officers, is vested with the government and management of the Harris County Jail and with supervision and protection of the prisoners and detainees within the jail, as well as the training and supervision of the jail employees.  Harris County, Texas also has the authority to contract for healthcare services for and on behalf of inmates.  At the time of Patrick Green's suffering and death in March of 2015, Sheriff Adrian Garcia was delegated policy making authority for the policies, procedures, rules and training for the Harris County Jail and was under the purview of the Harris County Commissioners Court.  Plaintiffs allege critical video evidence was destroyed related to Patrick Green's illness and death between March of 2015 and December 31, 2016, or later.  Either Sheriff Adrian Garcia or Sheriff Ron Hickman was delegated policy making authority for the policies, procedures, rules and training for the Harris County Jail.  The Harris County

Commissioners' Court and its members are the policy maker for the budget for the Harris County Jail, including all health care and personnel.

33. **Patrick Green's background**: Decedent Patrick Green was born March 25, 1987.  Kathryn Green and David Green are the parents of Patrick Green and are licensed attorneys in Texas. Patrick is a 2005 graduate of Incarnate Word Academy, Corpus Christi, Texas.  During high school, he was co-captain of the tennis team, played baseball, was a member of the band where he played the trumpet.  Patrick graduated from Baylor University in 2009 with BA degree in film and digital media.  While there, he played intramural rugby and enjoyed playing guitar at a local coffee shop.  He was also a member of the Knights of Columbus, a charitable fraternal organization of Catholic men dedicated to the service of others.  However, sometime in his college years, Patrick Green began to struggle with substance abuse.    Patrick was employed prior to his arrest utilizing his film and digital media degree.

34. **December 31, 2014 Arrest**:   On December 31, 2014, Patrick was on probation for a first-time criminal charge - drug possession.  He violated the technical terms of his probation and was taken to the Harris County Jail. Patrick was housed at the jail at 701 San Jacinto, Houston, Harris County, Texas, from December 31, 2014, until his death on March 24, 2015. Patrick

had been awaiting transfer, if any, to the Texas Department of Criminal Justice to begin serving a two (2) year sentence.

35. **Trustee Status and Housing**: Patrick was housed in a "pod", specifically the 3C4 pod meaning 3rd floor, pod C, cell block 4, which held approximately 25 inmates. There were four pods on the floor. In the center of the pod was the "picket," where one or more guards were placed to observe the inmates on the floor, and among other duties, respond to their requests. Along with other inmates in the pod, Patrick became a trustee at the Harris County Jail at 701 San Jacinto and he worked in the laundry room on the shift that started at approximately 2:00 p.m.

36. **Mold and filth**: The pod was extremely filthy and not cleaned on any regular schedule. The tables were rusty. There was orange and yellowish grime and filth in the showers and on the toilet and water fountain. Black dirt and mold-like material was coating the air vents and other areas – a common breeding ground for viral and bacterial pathogens.

37. **Patrick's Illness**: At least by March 19-20, 2015, Patrick requested to see a medic because he was sweating and not feeling well. By the 22nd, Patrick started feeling badly and was not talking, moving or eating much, was very cold, and his lips and fingers were turning blue. It was obvious to Harris County correctional officers and others that Patrick was the only inmate who

did not eat, drink, or left most of the food, on his tray in the days preceding his death. Patrick's bunk was close to the wall, which was composed of clear glass-like material, and near the door to the pod. The door to the pod was also of clear glass-like material. Thus, Patrick was visible to the correctional officers and others who were situated in the "picket," whose job it was to observe the inmates in the pods around the picket.

38.   Monday morning, March 23, 2015, Patrick could not get up to go to his work as a trustee, and he did not report for work. He appeared groggy, in an altered mental state, still had not eaten and could not move or speak well. Because every inmate in the pod was on the same laundry shift, this left Patrick clearly visible not only to the guard in the picket, but also to several other guards because trustees are escorted by guards to and from their work in the laundry. During the hours that the laundry working inmates were in the laundry, Patrick would be the sole occupant of the cell for hours at a time.  The correctional officers were required to physically enter Patrick's cell nine times per day.  All guards saw that Patrick was alone in his bunk, very ill, and knew he was not reporting for work in the laundry. When the inmates got to the laundry room, the guards in the laundry asked about Patrick and the other inmates said he was very sick. None of these correctional officers did anything to get medical care for Patrick.

14

39.  Later in the day on March 23, 2015, Patrick was much worse, still lying on his bunk and moaning. Patrick had not moved at all from the way he was lying on his bunk in the morning and could barely move. Again, Patrick was the only inmate not eating and leaving most of the food on his tray.

40.  On Monday, March 23, 2015 at least one inmate tried to get medical attention for Patrick by requesting assistance and buzzing for the guard in the picket, however, the buzzer was ignored by the jail guards. Upon information and belief, no one ever responded to the inmate requests. Furthermore, upon information and belief, other inmate request forms are ignored and not acted upon or acted upon after several days. Harris County, Texas failed to process requests for medical assistance and later destroyed the medical request forms evidencing the requests.

41.  On Tuesday, March 24, 2015 again Patrick was still very ill and not eating, drinking or moving. His voice was nearly incoherent. During the day on Tuesday before going to work in the laundry, an inmate buzzed the guard in the picket. Again, no one came. At least one jail guard, detention officer or deputy observed Patrick during the day on Tuesday. Again, Patrick did not eat any of the food on his tray, did not report to work in the laundry and, again, no one came to inquire about his inability to report to work or his condition.

42.   Later on March 24, 2015, Patrick tried to get to the water fountain, but was stumbling. A cellmate tried to help Patrick and observed he was wholly incoherent. Patrick was pale, could not stand on his own, could not talk, had not eaten or moved all day, and he "had black rings under his eyes." Patrick was apparently having seizures and was making humming noises.  At least two inmates again buzzed the jail guards, however, the guards ignored the buzz and paid no attention.

43.   Around this time, several inmates started banging on the glass walls between the pods and the picket. Two of Patrick's cellmates held Patrick up to the glass to show the guards in the picket how ill Patrick was, and they pounded on the glass wall to get the attention of the personnel in the picket, continuing to buzz for help. No one entered the pod to attend to Patrick. In fact, Harris County Detention Officer Warner Dean Ervin, a Defendant herein, put his foot in the door of the cell, spoke with the inmates promising to come in and check, then immediately slammed the door and left.  Patrick then collapsed onto the floor.  Other inmates returned him to his bunk.

44.   After about another 15 minutes, two guards finally came into the pod. Harris County Detention Officer Warner Dean Ervin approached Patrick, who was lying motionless on his bunk, and kicked Patrick four to five times in the back.  Patrick did not respond. The inmates in the pod pleaded with the

16

guard to stop kicking Patrick, telling him again that Patrick was very sick. Harris County Detention Officer Warner Dean Ervin and the other guard then did nothing.   After another 20-25 minutes passed, a stretcher came. Patrick's wrists and ankles were handcuffed to the stretcher, and he was taken away.

45.   **Delay in Medical Treatment by the Harris County Jail Medical Providers**:   Upon information and belief, Patrick was then taken to jail clinic at 701 San Jacinto. Also upon information and belief, Patrick received no medication or other treatment.   Patrick arrived at the jail clinic unresponsive. A nurse or other healthcare provider employed by Harris County was on duty at the 701 San Jacinto Jail clinic. No physician was present.   Despite Patrick's unresponsiveness and his lab values, said Harris County healthcare provider did not call for physician assistance or an ambulance for many hours. The healthcare provider noted to emergency medical service ("EMS") personnel that there had been three other inmates diagnosed with altered mental state in the prior two weeks of March 2015.

46.   Finally, according to Houston Fire Department EMS records, at approximately 8:39 p.m., EMS arrived at the jail clinic. The emergency personnel, along with Deputies S. Beard and B. Banks who reportedly provided security, departed the jail clinic at approximately 9:09 p.m.,

17

arriving at Ben Taub Hospital at 9:14 p.m. While EMS arrived at the jail using lights and sirens they did not use lights and sirens on the way to Ben Taub. Patrick went into cardiac arrest at approximately 11:20 p.m., and was pronounced dead at 11:59 p.m., on the eve of his 28th birthday.

47.    The Harris County Medical Examiner determined that Patrick's cause of death was acute bacterial meningitis.  At that time of his death, Patrick had been in the custody and deliberately indifferent care of Harris County, Texas for almost three full months.

48.    Harris County Jail medical personnel work in an institutional environment where viral and bacterial diseases and outbreaks are commonplace.  These personnel should have been trained to recognize the obvious signs and symptoms of bacterial meningitis.   Bacterial meningitis is a common infection and if treated, it is easily cured.  If untreated, it is deadly.  These personnel should have been trained to observe lab values and other symptoms to recognize the obvious signs and symptoms of bacterial meningitis.  Moreover, a physician should have been on duty and physically located at the Harris County Jail so that proper medical treatment would have been provided.  Harris County's policy was to ignore the need for an on-site and on duty physician at the Harris County Jail and the Harris

County Commissioners' Court did not approve a budget that would allow for the payment of such healthcare.

49.    From 2001 to 2006 there were 100 inmates that died in the Harris County Jail due to medical neglect.  This prompted the United States Department of Justice investigated as set out below.  From 2009 to 2015 seventy (70) inmates died at the Harris County Jail due to medical neglect.   In one consciously indifferent instance of medical and sanitary neglect, Terry Goodwin in 2013 was found covered in feces and rotten food, insect infestation and other filth.   After this incident, in April 2015, Harris County was exposed for its failures at the jail and 26 employees were disciplined, six supervisors were fired and two employees were indicted for their criminal neglect of Goodwin. After Andre Bonier's death in October 2014, also from medical deliberate indifference, two nurses at the Harris County Jail were indicted for their criminal neglect.   Harris County Sheriff Adrian Garcia still made no change in how healthcare was addressed/ignored at the Harris County Jail.

50.    The Houston Chronicle investigated the Harris County Jail's medical care. Senator John Whitmire in 2015 publicly stated to the Houston Chronicle that the Harris County Jail is "unsafe and unhealthy" and stated that Harris County Jail's inability to control the spread of tuberculosis and other

infectious diseases not only endangers inmates, but "overflows onto the streets of Houston."   The Chronicle reviewed jail deaths since 2009 and found 19 cases where inmates died of illnesses that were either treatable or preventable, or in which delays in care, or staff misconduct, could have played a role in their deaths.

51.   As an example, professor Edward A. Graviss, director of the molecular tuberculosis laboratory at the Methodist Hospital Research Institute, stated to the Houston Chronicle in 2015:  For sure I wouldn't want to be in that jail, because I have major concerns about how they are doing TB skin tests… It's like being in a Third World Country."

52.   The 2015 Houston Chronicle article also uncovered more than 1,000 disciplinary reports provided by the Sheriff's Office and found 35 failures to complete cell checks and 120 times that jailers were disciplined for misconduct involving abuse of authority or misuse of force since 2009, including 13 instances in which jailers failed to seek medical attention for inmates.

53.   **Harris County has a long-standing problem of ignoring medical needs of Prisoners and Detainees despite being on notice following a 2009 Justice Department Report:** These Defendants have had a long-standing and troubling consistent problem in their jail with obtaining appropriate and

timely medical treatment and with proper training.  In fact, in 2009, the United States Department of Justice concluded after its own year-long investigation that inmates' constitutional protections had been violated by excessive violence and by substandard medical care that led to an "alarming" number of prisoner deaths (Attached as Exhibit A).   Since that time Harris County has made no improvements to alleviate the constitutionally inadequate medical care crisis in the Harris County Jail.

54.   According to a recent analysis of death data from July 13, 2015 to July 13, 2016, inmates at the Harris County Jail die at a higher rate per capita than most other jails in the nation.  In the year following Sandra Bland's death in another county that refocused the public on jail care and jail deaths, a study found that at the Harris County Jail at least 12 inmates died related to medical issues as opposed to assaults or suicides.

55.   For example, in 2006, Leamon Caldwell died in the Harris County Jail from hypertension because he was refused medications.

56.   For example, Calvin Mack died a painful death at the Harris County Jail in 2007 as he coughed up blood and had copious amounts of rectal blood and after the other inmates kept yelling for help a guard stated he [Mack] just needed a Band-Aid.

57.   For example, in 2011, Norman Hicks, 72, a retired butcher, had been in the Harris County Jail about ten days when other inmates pleaded with jailers to have him transferred to the mental health unit.  Hicks had been placed in general population for violating probation in a family violence case even though intake workers determined he suffered from a combination of severe mental problems: bipolar disorder and schizophrenia.  The inmates worried that Hicks might be killed by others he annoyed.  Hicks died after being punched by a jail guard named "Pool" who had been involved in 11 previous use-of-force incidents. The Harris County Medical Examiner ruled the 2011 death a homicide. Pool had slugged Hicks breaking facial bones. Hicks fell and hit his head as a result of one or more of the blows. Pool stared at Hicks, who was not speaking or moving, according to an account he gave investigators, then left for the jail clinic to clean himself. Other jailers locked the door, and no one alerted supervisors or medical staff.  When a jail sergeant noticed Hicks a half-hour later, he was not breathing. Pool described the blow delivered to Hicks as a routine event in the Harris County Jail.

58.   In September 2012, Harris County Detention Officer Rima E. Fortune received a 10-day suspension for denying food to Barbara Hammond, a diabetic.

59.   For further example, in February 2013, Cedric Collins Jr. died in the Harris County Jail, despite the cause of death being visible, noticeable blunt force trauma from being injured in an automobile accident just prior to his death and arrest. Jail guards and jail staff observed that Collins was injured before his death, yet they failed to give medical care or take him to a hospital.

60.   In March of 2013, Alex Guzman killed himself in the Harris County Jail while two jailers who were supposed to be watching him ate pizza and studied online classes for their jailer's licenses.

61.   Bacterial infections are common-place and ignored by jail medical staff at the Harris County Jail: From January 2001 to April 2005, there were 60 medical quarantines at the Harris County Jail.  In 2001, Stacy Earl Matlock died from liver disease and a secondary staph aureus bacteremia.  In 2002, Roland Oliva died of sepsis (a bacterial infection of the blood).  In 2008, Margarita Saavedra begged for medical treatment for days before dying from a staph infection.

62.   In further detail of the Goodwin incident described above, Sheriff Adrian Garcia waited too late to help Patrick Green.  Patrick died in late March, but it was not until April 2015 that Garcia fired six supervisors, suspended 29 jailers and demoted a major for that neglect case.  Initially jailed for the

minor incident of marijuana possession, Goodwin was later found incompetent to stand trial.

63.  On September 17, 2015, Lafayette Harris died from pulmonary thrombosis and related deep venous thromboses of his lower extremities at the age of 37 years. He had been in the Harris County Jail since June of 2015.   On September 17, 2015 Harris complained of chest pain.  He was administered an aspirin and a nitro tablet by Dr. Lu at around 6:30p.m.  Apparently, Dr. Lu left his patient unattended or improperly attended after which Harris lost pulse, and without Dr. Lu being present, CPR was administered by a bystander.  Two hours after Dr. Lu initially saw Harris, he was transported to St. Joseph's Hospital by ambulance where he was declared dead.

64.  On September 29, 2015, Mario Vega Cantu died from gastrointestinal hemorrhage.  He had been booked into the Harris County Jail on September 25, 2015 and at that time complained to jail medical personnel of head and abdominal pain.  His complaints continued and on September 28, 2015, he was seen by Dr. Lu, a Defendant here, who essentially gave him a clean bill of health and prescribed a non-steroidal anti-inflammatory, a drug that is contraindicated in a gastrointestinal "GI" bleed.  Less than 24 hours later he collapsed and was again taken to the jail clinic where he was vaguely "assessed" by nursing staff.  He was eventually taken to St. Joseph Hospital

where he died less than one hour later of gastrointestinal hemorrhage (upper and lower GI bleed), a condition which would normally have exhibited abnormal bowel sounds at the time he was seen by Dr. Lu.  Moreover, much like Patrick Green, he had unexplained recent contusions on his abdomen, back and extremities although the autopsy report includes a statement that the surveillance video of his housing unit showed no assault.

65.   Even as late as February 13, 2017, inmate Vincent DeWayne Young was found hanging by a bed sheet in the Harris County Jail clinic, in a continued incident of deliberate indifference.   Inspectors from the Texas Commission on Jail Standards (TCJS) subsequently declared the jail out of compliance with minimum state standards.  TCJS Executive Director Brandon Wood publicly stated that "Observation is key to operating these jails effectively, efficiently and safely."  New measures have been placed upon the Harris County Jail including requiring watch commanders to conduct weekly, random audits comparing detention officers' written records on inmate observation rounds with video to verify the detention officers' accuracy. Supervisors also must confirm that detention officers obtain firsthand evaluation of the inmates' attitudes and temperament and observe the physical, mental, and emotional condition of each inmate to detect signs of distress or need for medication or special services.

66.    A Houston Chronicle investigation into the Harris County Jail in 2015 found dozens of instances in which jailers skipped required cell checks or faked records.

67.    **Lack of Training and Understaffing.**  Harris County Detention Officers' starting pay is $18 per hour, less than any other county worker except entry level clerks, and minimum age is 18. The guards are forced to work mandatory overtime.  Jailers need only 40 hours of training, which they must complete within a year. Jail new-hires complete training online.  In 2015, detention officer training was by watching video tapes.

68.    Harris County, Texas and jail personnel, including but not limited to Harris County Detention Officer Warner Dean Ervin and/or Harris County Detention Officer Michael James Malloy, Harris County Detention Officer Michael James Malloy, Harris County Detention Officer Jennifer Wagner, Harris County Detention Officer Maria Rodriguez, Harris County Detention Officer Martinez, Harris County Detention Officer Jose M. Sanchez, Harris County Detention Officer C. Maltez,  Harris County Detention Officer M. Vela (alone and in concert), under color of law violated Patrick Green's constitutional right to basic, necessary medical treatment and under no circumstances were their actions objectively reasonable, ultimately causing his death.  Despite apparent extreme illness, altered mental status and pleas

26

for help, Patrick had lain mostly motionless for days and did not eat or drink; no one ever examined him despite all reasonable indications that they should with deliberate indifference to the risk of serious illness or death.   For example, Harris County Detention Officer Jennifer Wagner, Harris County Detention Officer Maria Rodriguez, Harris County Detention Officer Martinez, Harris County Detention Officer Jose M. Sanchez Harris County Detention Officer C. Maltez, and Harris County Detention Officer M. Vela, who each worked on March 23, 2015 and/or March 24, 2015, noted in their pass-on reports that cells were checked for hygiene, that cameras were operational, but not a single note that Patrick Green was not going to work, and instead was in his bunk not moving much, not drinking and eating.   As an additional example, Michael James Malloy was aware that Patrick had vomited and that despite having always previously worked in the laundry, he was unable to work.   Malloy observed Patrick visibly and obviously ill, functionally debilitated, and did nothing in one further example of deliberate indifference.   Malloy did not offer to Patrick the ability to get healthcare despite recognizing that he was too ill to work, communicate, and function. For further example, Warner Dean Ervin recognized that Patrick was too ill to function and delayed medical treatment for Patrick in accord with Harris County policy, custom, practices and procedures.   Instead Warner Dean

27

Ervin on his delayed return to check on Patrick, kicked him more than one time as his method of checking his medical condition; this is deliberate indifference to Patrick's medical condition.  Patrick, as a detainee, was unable to seek medical care and Defendants had a duty to keep him safe from harm and to provide adequate medical treatment.  The treatment of Patrick defies all logic and clearly shows deliberate indifference.

69.    In March of 2015 it was a documented and known policy, practice and custom of Harris County, Texas, that the medical staff at the jail would be staffed by LVNs (Licensed Vocational Nurses) and sometimes RNs (Registered Nurses), but no physicians at 701 San Jacinto.  The LVNs and sometimes the RNs as a matter of policy and practice make the medical determinations as to what care an inmate will receive and whether an inmate will receive care from a physician.  Upon information and belief per Harris County custom and practices, RNs and/or LVNs were charged with using and enforcing physician protocols which is a prohibited practice, violates law and standards, and further amounts to deliberate indifference.  No physician was regularly on duty at the Harris County Jail at 701 San Jacinto facility in March of 2015, and no physician reviewed the LVN and RN medical decisions or reviewed charts to make sure that medical care, if any, given was warranted and appropriate.  Patrick was taken by stretcher to the

clinic at 701 San Jacinto, and due to his inability to communicate was wholly dependent upon an LVN to make his medical assessment. Standing alone this policy, custom and practice of allowing LVNs to act as physicians was egregious, fraught with violations of the Medical Practices Act, a prohibited practice under the Texas Board of Nursing and deliberately indifferent to Patrick Green's medical needs.

70. Harris County Jail was understaffed by qualified doctors. The Harris County Jail had one doctor on staff to cover all inmates and detainees at the Downtown jail complex, with any and all medical conditions, 24 hours a day – 365 days a year. With the population of Harris County Jail inmates and detainees at approximately 10,000, this is a ratio of 10,000:1. In Harris County, with a 2013 population of approximately 4,336,853, there are 9605 medical doctors of various practices and specialties[1]. This is a ratio of patients to doctors in Harris County generally of approximately 455.5:1. As such, the doctor for the Harris County Jail deals with close to 2000% more patients than other doctors in Harris County. The lack of adequate medical staffing and budget are due to decision making at the highest levels of

_____

[1] Singleton, T; Miller, P.; Avila, S.; Garber, G.; *"The Physician Workforce in Texas, An Examination of Physician Distribution, Access, Demographics, Affiliations and Practice Patterns in Texas' 254 Counties"*; North Texas Regional Extension Center, April 2015.

administration and control in Harris County and/or the Harris County Commissioner's Court and the Harris County Jail.  There was inadequate medical staff to diagnose and treat Patrick Green in the Harris County Jail.

71.   Harris County Jail was understaffed due to budgetary and other reasons. Harris County and/or its vendors are discouraged from sending inmates to the hospitals due to the costs of treatment that would be charged to Harris County.  This understaffing meant that there was not staff available to attend to ill inmates such as Patrick Green.  The lack of adequate staffing and budget are due to decision making at the highest levels of administration and control in Harris County and the Harris County Jail.  There was inadequate staff to accompany Patrick Green to medical care on floors or in facilities other than in the pod and at the 701 San Jacinto facility.

72.   In fact, in a Houston Chronicle article in 2015, Richard Newby, a veteran sergeant who retired in March of 2015 from the Harris County Sheriff's Department after 28 years stated: "I don't think the medical system has expanded enough to meet the needs of the jail population – some areas have not increased in terms of size or staffing."

73.   Harris County Jail medical personnel, Michael Seale, M.D., Marcus Guice, M.D., Bobby Davis, John M. Lu, M.D., individually and as an agent for Staff Care, Inc., a wholly owned subsidiary of AMN Healthcare Services,

Michele Johnson, LVN a/k/a Michele Williamson, LVN, Amarachi Chukwu (a/k/a Amarachi Ukabam), LVN, Marlo Kelly, R.N., Gregory Burkhalter, R.N., Tiffany Moses, LVN, Cheryl Koehler, LVN, Rachel Sangster, RT, Melissa Haley, LVN, and Jamar Bailey, LVN, (alone and in concert) were negligent and intentionally indifferent in the care and treatment of Patrick. These medical providers accepted a duty to act as a reasonably prudent emergency medical services healthcare provider, entering into a medical provider-patient relationship on and leading up to March 24, 2015. These medical providers violated 42 USC §1983 and breached the applicable standards of care required for the care and treatment of Patrick when they ignored his altered mental status, attempted to attribute it to drugs, documented a hematoma on Patrick as a tattoo (from being needlessly kicked by Harris County Detention Officer Warner Dean Ervin) and allowed critical time to pass as Patrick lay dying. Upon information and belief per Harris County custom and practices, RNs and/or LVNs were charged with using and enforcing physician protocols which is a prohibited practice, violates law and standards, and further amounts to deliberate indifference and the medical doctor defendants participated in and condoned such prohibited and illegal practices. Further, upon information and belief Harris County Jail was understaffed due to budgetary and other reasons. Harris

31

County and/or its vendors are discouraged from sending inmates to the hospitals due to the costs of treatment that would be charged to Harris County.

74. Upon information and belief, in March of 2015, Michael Seale, M.D., was in charge of the medical staff at the Harris County Jail including the decisions not to staff full-time physician(s) and to allow LVNs and RNs to practice medicine as physicians.  Moreover, he was in charge of training the jail staff which would include training on common, ubiquitous infections and viruses found in institutional settings as well as understanding lab values and medical reasons for altered mental status.  Upon information and belief, Seale is wholly or partially in charge of triage protocols, medical protocols, staffing, medical and non-medical staff training in medical matters, staffing levels, budgeting and customs and practices of healthcare in the Harris County Jail. Ultimately, the training of all jail staff in March of 2015 was the responsibility of Sheriff Adrian Garcia.

75. The training provided by Harris County and for Harris County in March of 2015 through Michael Seale, M.D. and ultimately Sheriff Adrian Garcia was so inadequate as to constitute a failure to train.  Members of the jail staff are not instructed on differentiating between an altered mental state due to mental illness or the ingestion of drugs/alcohol or indications of a severe

medical illness.  While jail staff and Defendants have not been deposed, it is clear that the so-called treatment offered by medical staff is the same for any inmate with altered mental status regardless of signs and actual indications of physical illness. Patrick Green should have been immediately transported to a hospital where physicians could have immediately begun life-saving treatment; instead he was medically ignored by the deliberate indifference of health care providers and jail staff.  Critical treatment time passed due to this policy, practice, custom and deliberate indifference in medical-related training and care.   In addition, misinformation on Patrick's medical condition given by jail staff and jail medical providers to EMS resulted in additional delay in treatment; for example, the information given resulted in EMS staff administering NARCAN (anti-opiate overdose medication) to Patrick and an improper operating diagnosis of drug use ("Tox/Ingestion") and drug reaction ("Drug Reactions: NMS" (neuroleptic malignant syndrome)).  This improper and inadequate training of all jail staff, including the Defendants, is deliberately indifferent to the medical needs of inmates such as Patrick Green and was a direct cause of his death.

## CAUSES OF ACTION AGAINST ALL DEFENDANTS

### CIVIL RIGHTS VIOLATION
### [42 U.S.C. §1983, §1988;
### Fourth, Eighth and Fourteenth Amendments to the Constitution of the United States]
### (Against All Defendants[2])

76.     Plaintiffs re-allege and incorporate all allegations of this Complaint as if fully set forth herein.

77.     The Civil Rights Act, codified as 42 U.S.C. §1983, provides as follows:

> *Every person who, under color of any statute, ordinance, regulation, custom or usage, of any state or territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or any other person within the jurisdiction thereof to the deprivation of any laws, privileges, immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.  42 U.S.C. §1983.*

78.     <u>Fourth Amendment:</u>  The Fourth Amendment to the US Constitution states:

**The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause,**

---

[2] Harris County is not a defendant here, but is a defendant in the related case on the same facts related to the same events, in Civil Action 4:16-cv-893 pending in the United States District Court for the Southern District of Texas, Houston Division.  A Motion for Leave to Amend is pending in that matter; this case was filed in an abundance of caution should the motion for leave there be denied.  If that occurs, consolidation of the two matters will be sought.

**supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.**

79. Eighth Amendment: The Eighth Amendment to the US Constitution states: **Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted.**

80. Fourteenth Amendment:   The Fourteenth Amendment to the US Constitution states: **All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the state wherein they reside. No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.**

81. Under the Fourteenth Amendment in conjunction with the Fourth and Fifth Amendments, a detained person who is seriously ill or injured, such as Patrick Green, must be provided medical care and the failure to do so violates the Fourteenth Amendment's prohibition on both arbitrary denial of life and cruel and unusual punishment (*Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)).   Defendants intentionally refused to provide appropriate and timely medical assistance to Patrick Green.

35

82.   Patrick Green was constitutionally entitled to reasonable medical care for his serious medical needs.   By their acts and omissions alleged above, all Defendants under color of law and acting pursuant to the customs and policies of Harris County, deprived Patrick Green of his rights to life, liberty and bodily integrity, thereby violating the Eighth Amendment right to be free from cruel and unusual punishment and the Due Process Clause of the Fourteenth Amendment, by failing to provide proper medical treatment, failing to protect him and through deliberate indifference to his medical needs, all for which Defendants are liable to Plaintiffs pursuant to 42 U.S.C. §1983.

83.   All Defendants acting through official policies, practices, and customs and with deliberate and callous indifference to the constitutional rights of Patrick Green, failed to implement and/or practice any policies, procedures   and practices  necessary to  provide  constitutionally adequate medical services to  Patrick Green  during  his  incarceration  in  Harris  County  Jail  and implemented *de facto* policies, procedures and practices which actually interfered  with or prevented Patrick Green from receiving medical services and  appropriate  medication.   Furthermore,  the  conditions  complained of were  not  reasonably  related  to  any  legitimate  governmental  objective,  as there  is  no  legitimate  governmental  objective  in  failing  to  call  in  a  medical

doctor to assess an inmate, especially an inmate with altered mental status, or to transport an inmate to receive medical services.

84.    In addition, and in the alternative, HCSD jail personnel, including but not limited to Harris County Detention Officer Warner Dean Ervin and Harris County Detention Officer Michael James Malloy, Harris County Detention Officer Jennifer Wagner, Harris County Detention Officer Maria Rodriguez, Harris County Detention Officer Martinez, Harris County Detention Officer Jose M. Sanchez, Harris County Detention Officer C. Maltez and Harris County Detention Officer M. Vela (alone and in concert and/or individually), Harris County Jail medical personnel, Michael Seale, M.D., Marcus Guice, M.D., Bobby Davis, John M. Lu, M.D., individually and as an agent for Staff Care, Inc., a wholly owned subsidiary of AMN Healthcare Services, Michele Johnson, LVN a/k/a Michele Williamson, LVN, Amarachi Chukwu (a/k/a Amarachi Ukabam), LVN, Marlo Kelly, R.N., Gregory Burkhalter, R.N., Tiffany Moses, LVN, Cheryl Koehler, LVN, Rachel Sangster, RT, Melissa Haley, LVN, and Jamar Bailey, LVN, (alone and/or in concert or individually) engaged in a policy and practice as set out herein that resulted in the death of Patrick which was condoned by Harris County Sheriff Adrian Garcia.

37

85. In addition, and in the alternative, the County and jail personnel, including but not limited to Harris County Detention Officer Warner Dean Ervin, Harris County Detention Officer Michael James Malloy, Harris County Detention Officer Jennifer Wagner, Harris County Detention Officer Maria Rodriguez, Harris County Detention Officer Martinez, Harris County Detention Officer Jose M. Sanchez, Harris County Detention Officer C. Maltez and Harris County Detention Officer M. Vela (alone and in concert and/or individually), Harris County Jail medical personnel, Michael Seale, M.D.,  Marcus Guice, M.D., Bobby Davis, John M. Lu, M.D., individually and as an agent for Staff Care, Inc., a wholly owned subsidiary of AMN Healthcare Services, Michele Johnson, LVN a/k/a Michele Williamson, LVN, Amarachi Chukwu (a/k/a Amarachi Ukabam), LVN, Marlo Kelly, R.N., Gregory Burkhalter, R.N., Tiffany Moses, LVN, Cheryl Koehler, LVN, Rachel Sangster, RT, Melissa Haley, LVN, and Jamar Bailey, LVN, (alone and/or in concert or individually) (alone and in concert and/or individually) engaged in a policy and practice of deliberate indifference to the care and custody of jail inmates and Patrick  that resulted in the death of Patrick.

86. In addition, and in the alternative, the County agave inadequate training to civilian and officer jail personnel, including but not limited to Harris County

Detention Officer Warner Dean Ervin, Harris County Detention Officer Michael James Malloy, Harris County Detention Officer Jennifer Wagner, Harris County Detention Officer Maria Rodriguez, Harris County Detention Officer Martinez, Harris County Detention Officer Jose M. Sanchez, Harris County Detention Officer C. Maltez and Harris County Detention Officer M. Vela on observing inmates, recognizing signs and symptoms of communicable and/or ubiquitous communicable/infectious diseases and responding to serious and/or immediate medical needs.

87.     Plaintiffs contend that policies, procedures, practices and customs of the County and/or jail personnel put Patrick Green in an inherently dangerous situation and violated his rights under the Eighth and/or Fourteenth Amendments to the Constitution of the United States for which Plaintiffs seek recovery.

88.     Plaintiffs contend that the failures to train and supervise staff regarding the policies, procedures, practices and customs of the County and/or jail personnel, including but not limited to Harris County Detention Officer Warner Dean Ervin, Harris County Detention Officer Michael James Malloy, Harris County Detention Officer Jennifer Wagner, Harris County Detention Officer Maria Rodriguez, Harris County Detention Officer Martinez, Harris County Detention Officer Jose M. Sanchez, Harris County

Detention Officer C. Maltez and Harris County Detention Officer M. Vela (alone and in concert and/or individually) put Patrick Green in an inherently dangerous situation and violated his rights under the Eighth and/or Fourteenth Amendments to the Constitution of the United States for which Plaintiffs seek recovery.

89.   During the relevant time period contemplated by this cause of action, the County and jail personnel, including but not limited to Harris County Detention Officer Warner Dean Ervin, Harris County Detention Officer Michael James Malloy, Harris County Detention Officer Jennifer Wagner, Harris County Detention Officer Maria Rodriguez, Harris County Detention Officer Martinez, Harris County Detention Officer Jose M. Sanchez, Harris County Detention Officer C. Maltez and Harris County Detention Officer M. Vela (alone and in concert and/or individually) failed to follow state and federal laws, federal and state regulations and the standard of care for treatment of Patrick Green.

90.   During the relevant time period contemplated by this cause of action, the County and jail personnel, including but not limited to Harris County Detention Officer Warner Dean Ervin, Harris County Detention Officer Michael James Malloy, Harris County Detention Officer Jennifer Wagner, Harris County Detention Officer Maria Rodriguez, Harris County Detention

40

Officer Martinez, Harris County Detention Officer Jose M. Sanchez, Harris County Detention Officer C. Maltez and Harris County Detention Officer M. Vela in his Individual Capacity (alone and in concert and/or individually) deliberately ignored or refused to follow their own written policies and procedures and those of the State of Texas and other authorities on medical treatment and standard of care for those in custody.

91.   The elements of a cause of action under 42 USC §1983 against a governmental entity are:

a.      Plaintiff is deprived of rights under the United States Constitution;

b.      Such deprivation is caused by a person acting under color of state law;

c.      The governmental entity adopted, or failed to adopt, a policy statement, ordinance, regulation or decision adopted and promulgated  by  the governmental entity's lawmaking officers or by an official to whom the law makers delegate law-making authority or a persistent, widespread practice of officials or employees of the governmental entity which, though not authorized or officially adopted and promulgated, the policy is so common and well settled as to constitute a custom that fairly represents policy of the governmental entity; and

d.   The governmental entity was deliberately indifferent to the party's constitutional rights.

92.   Among the facts at the time of filing this Amended Complaint supporting each of the elements of a §1983 claim listed above are found above, are incorporated herein, and applicable to all claims, but may be summarized in part as follows:

a.   Harris County allowed known deficiencies in policies and procedures to exist and continue at the Jail as found in the 2009 United States Department of Justice Investigation Report attached hereto as Exhibit A including but not limited to the following:

> A.  Medical Care
>
>     The Jail has functional systems in place to provide medical care and treatment to a large population of detainees.  These systems include an initial screening process, a more comprehensive health assessment for longer-term detainees, a sick call process, a modern clinic, qualified medical staff, a professional management structure, and mechanisms to obtain outside specialty care.  Despite the general quality of such systems, the Jail fails to provide consistent and adequate care for detainees with serious chronic medical conditions.  We found specific deficiencies in the Jail's provision of chronic care and follow-up treatment.  These deficiencies, in themselves and when combined with the problems in medical record-keeping and quality assurance discussed below, are serious enough to place detainees at an unacceptable risk of death or injury.
>
> ***
>
>     hazardous effects of medication.  Because of crowding, administrative weaknesses, and resource limits, the Jail does not provide constitutionally adequate care to meet the serious medical needs of detainees with chronic illness.
>
> ***

42

identify detainees with serious chronic medical conditions.  In particular, we found that the Jail has delegated screening to nurses who are in need of additional training and more administrative oversight by physicians.  For instance, we found assessment forms completed by nursing staff who had not actually completed the assessments.  We also found that physicians do not routinely see detainees with chronic conditions to assess the status of their health.  Moreover, Jail staff do not conduct periodic surveys of the housing units to identify detainees who may have chronic medical conditions, but who may not necessarily be identified by the normal sick call process or the screening procedures conducted during detainee booking.  Such deficiencies result in gaps in the system for identifying detainees with serious chronic medical conditions.  For instance, staff may miss some detainees who are degenerating mentally or physically, but who are unable or unwilling to utilize the normal sick call process.

***

  2. <u>Inadequate Continuity of Medical Care</u>

  Chronic and some acute medical conditions require appropriate ongoing treatment and continuity of care.  Failure to address detainee medical conditions over time can lead to an increased risk in morbidity and mortality.  Systems and practices, such as adequate record-keeping and follow-up exams by qualified staff, must be in place to manage the serious medical conditions of detainees during the length of their incarceration.  The Jail does not have a system in place to provide such continuity of care for some of the detainees with the most serious medical conditions.

***

hundreds of sick detainees.  Many of the detainees with serious medical conditions cannot be adequately identified or treated solely through an acute care process.

***

  In the absence of a chronic care program or other systems for ensuring follow-up care, the sick call process serves as the primary mechanism for the Jail to provide continuity of care.  This system is not capable of providing such continuity of care.  The sick call process itself is seriously strained due to crowding, staffing limits, and some problematic practices.  For

***

43

at 1200 Baker.  Because the main clinic also serves as the main
intake facility and emergency treatment center, the 1200 Baker
detainees must effectively share the same clinic resources as
newly admitted detainees, emergency cases, and detainee transfers
from other units who require additional medical supervision.
This puts a heavy strain on 1200 Baker medical staff and impedes
detainee access to care.

\*\*\*

     More generally, the Jail's administrative procedures allow
delays in care to be easily overlooked.  Jail procedures require
that detainees complete forms to request medical care.  The Jail
disposes of these forms, however, just after they are processed.
Once the forms are destroyed, the Jail apparently cannot track
detainee requests for medical care in order to determine whether
they have been fulfilled.  Another peculiar Jail practice
involves the process for responding to requests for specialty
care.  As a matter of routine practice, Jail detainees submit
requests for specialty care to a clerk.  This process has
apparently little or no physician oversight, which means that
access to specialty care is not initially reviewed by qualified
personnel.  This lack of oversight means that individuals who may
need more intensive or immediate care receive the same level of
attention as those with relatively low priority needs.

\*\*\*

     3.   <u>Inadequate Medical Documentation and Quality Assurance</u>

     Medical record-keeping and quality assurance are basic
components of a clinical practice that is consistent with
generally accepted correctional medical standards.  These systems
help identify and correct potential problems with patient care.
Harris County has deficiencies in both areas, and these
deficiencies contribute to problems with chronic care and
continuity of care.

\*\*\*

The Jail's process for maintaining medical records and processing
medical orders often leaves medical records unavailable to nurses
and doctors.  Medical staff have little or no access to the
records when the pharmacy staff are filling out medication
orders, because the pharmacy staff have custody of the records
when completing those orders.  During our fact-gathering, we also
found various record-keeping problems such as a lack of
compliance with professional record-keeping formats, illegible
physician notes, and factually inaccurate documentation.  These
deficiencies affect the quality of care and the medical staff's
ability to meet Constitutional requirements.

\*\*\*

As a matter of technical assistance, we should note that correctional facilities often benefit from having an adequate quality assurance process.  Such a process can help

administrators self-identify and correct any deficiencies.  A large facility may have particular difficulty addressing systemic constitutional deficiencies without such a process.  The Jail does engage in some effective quality improvement activities in order to track and trend medical-related incidents at the facility.  The activities do not, however, include adequate mechanisms to review and evaluate Jail physicians; nor does the process include mechanisms that could help ensure more consistent and adequate record-keeping.  The mortality review process does not include feedback to appropriate physician staff.

\*\*\*

As a result of systemic deficiencies including a lack of appropriate policies and training, the Jail exposes detainees to harm or risk of harm from excessive use of force.  In a

\*\*\*

(1) the Jail's crowded conditions currently exacerbate many of the constitutional deficiencies identified in this letter; and (2) the Jail needs a more comprehensive, systemic approach to dealing with a large and growing Jail population.

Jail crowding affects multiple Jail systems.  For instance, it impedes detainee access to medical care, indirectly affects detainee hygiene, and reduces the staff's ability to supervise detainees in a safe manner.  How the Jail handles inmate

***

More generally, while clearly the use of outside facilities
and other tactics have helped to alleviate some of the population
pressures at the Jail, it is less clear whether the Jail actually
has a workable long-term plan for dealing with the types of
systemic problems noted in this letter, especially in light of
potential population growth.  The County is reportedly working to
address many of the specific issues raised in this letter, but at
this early remedial stage, it is difficult to determine how much
progress will eventually be made.  For instance, if the Jail
increases staff, but then the Jail population simultaneously
increases, those staff could quickly become overwhelmed.  In
other words, when dealing with crowding and its effects on
security, medical care, and various Jail operations, the
Sheriff's Department should evaluate issues and remedies in a
systemic manner.  Otherwise, it may be much more difficult to
resolve deficiencies in a complete and long-term manner.

***

procedures.  The Jail lacks, however, certain necessary
structured maintenance, sanitation, and fire safety programs.

***

1.  <u>Sanitation and Hygiene</u>

While the Jail generally appeared to be clean and many
systems seemed to be well-maintained, certain deficiencies in the
Jail's hygiene practices and maintenance programs expose
detainees to an unacceptable risk of injury, disease, or other
harm.  Jail crowding contributes to these deficiencies.

First, the Jail does not have systems in place to ensure
adequate detainee personal hygiene.  For example, the facility's
laundry facilities and procedures are currently inadequate given
the size of the Jail population.  As a general matter, the Jail

***

laundry.  As a result, we found a significant amount of
unsanitary bedding, clothing, and mattresses throughout the
facility.  Such unsanitary conditions can expose detainees to a
serious risk from infectious disease.

\*\*\*

 Another example of poor hygiene practices involves detainee grooming and shaving equipment.  The Jail's barbers practice their trade in an unhygienic manner.  Clipper blades, guards, and supply boxes appeared to be dirty and had not been cleaned between uses.  Detainee barbers did not keep their equipment in disinfectant solutions.  As discussed previously in this letter's section on protection from harm, razor blades are not well controlled in the facility.  The availability and use of dirty, shared razors and blades is a serious risk, both in terms of disease transmission and as a security matter.

\*\*\*

 Finally, the Jail's plumbing and mechanical systems require improved maintenance in order to ensure hygienic conditions in certain housing units.  While most of the Jail is properly

\*\*\*

 unhygienic.  Moreover, when we tested some of the drains, they back-flushed into the cells.  Elsewhere throughout the Jail, we found drains clogged with significant accumulations of debris.

 b. Harris County failed to enact or completely enact recommended policies and procedures to correct and prevent the shortfalls found in the 2009 United States Department of Justice Investigation Report attached hereto as Exhibit A including but not limited to the following:

 2. The Jail should update and improve the medical and mental health quality assurance and training programs to ensure compliance with generally accepted correctional medical standards.  These improvements should include additional internal self-auditing to ensure that staff conduct appropriate assessments, provide timely treatment, and document care in a manner consistent with generally accepted correctional medical standards.

3.   The Jail should develop a system to monitor the effects of medications and to ensure appropriate follow-up for detainees with serious medical or mental health conditions.

4.   The Jail should develop a system to track sick call requests and identify barriers to timely access to medical or mental health care.  Sick call requests need to be triaged by appropriate personnel to ensure appropriate and timely access to medical care.

5.   The Jail should ensure that medical consultation and specialty services receive physician oversight.

6.   The Jail should employ sufficient qualified staff to ensure detainees have adequate access to medical and mental health care.

***

3.   The Jail should increase video surveillance in critical housing areas and alter staffing patterns to provide additional direct supervision of housing units.

***

D.   Sanitation and Life Safety

1.   The Jail should develop and implement a long-term plan for addressing Jail crowding and population growth.

2.   The Jail should develop and implement policies and procedures to improve detainee hygiene to a level consistent with generally accepted health standards.  The Jail should specifically improve laundry practices and facilities to ensure that the Jail can adequately wash and sanitize detainee laundry.  The Jail should also maintain, at all times, a sufficient supply of sanitary bedding, linen, clothing, razors, and other hygiene materials.

c.   The County and its employees failed to properly train, hire, control, discipline and supervise employees;

d.   Failed to establish and maintain a proper policy for dealing with the health of detainees/prisoners;

e.    Failed to provide medical care from proper medical professional(s) to detainees/prisoners;

f.    Failed to establish and maintain proper policies for assurance of medical care of detainees/prisoners;

g.    Failed to establish and maintain proper infectious/bacterial diseases screens for detainees/prisoners in order to rule out other causes of behavior and/or symptoms, such as altered mental status;

h.    Failed to establish and maintain proper protocols for checking previous medical history of detainees/prisoners when making medical decisions;

i.    Failed to establish and maintain proper policies for treating persons with unpredictable medical or mental conditions and/or altered medical or mental health conditions;

j.    Promulgated, condoned or showed indifference to improper policies or customs;

k.    Jail and medical staff fail to properly examine inmates or send inmates to clinic or external medical care providers;

l.    Harris County fails to provide for appropriate budget and employee staffing;

m.    Harris County fails to provide adequate sanitation to prevent diseases of inmates, and

n.    Continued such practices of improper policies or customs as to constitute custom representing policy.

93.    These actions by Defendants subjected Patrick Green to confinement with constitutionally inadequate medical services, and medications, such as:

a.    Medical records that are inaccurate, incomplete, and not transmitted to the proper medical professional in the Harris County Jail;

b.    Confinement conditions that do not ensure safe, humane and decent conditions including the intake of food and water;

c.    Complete failure to assess ongoing medical or mental condition concerns;

d.    Staffing the jail with licensed vocational nurses, registered nurses and others with no oversight or supervision by qualified medical personnel in violation of Texas Board of Nursing and medical rules and standards and complete failure to hire, train, supervise sufficient qualified staff to insure proper medical and mental healthcare;

f.    Not having a licensed physician at 701 San Jacinto Clinic;

g.    Failure of Jail medical staff to self-audit;

h.    Failure of Jail medical staff to track medical requests and to properly triage medical requests to insure proper and timely access to medical care;

i.    Failure to insure physician oversight, and

j.    Requiring LVNs to make medical assessments of all inmates without proper licensing, training or supervision.

94.    The Individual Defendants, as applicable, intentionally, and with deliberate indifference, deprived Patrick Green of his clearly established federal constitutional rights, including, but not limited to:

a.    His right to reasonably safe conditions of confinement;

b.    His right to receive proper medical services and medications for any serious medical conditions; and

c.    His right to be free from cruel and unusual punishment.

95.    Each Individual Defendant had a duty to ensure that Patrick Green received proper medical care, food and water, yet failed to do so. Patrick lay in his bunk, not eating or drinking and slowly dying for days with no medical attention despite numerous oral and written requests by him and other inmates to be seen by the clinic at 701 San Jacinto. Once he was close to unconsciousness with a highly altered mental state he was taken to the clinic at 701 San Jacinto where he was never physically examined in person by a

physician and where despite all outward signs of a serious medical condition including altered mental status he was ignored.  The Individual Defendants' actions were far more than negligent as Patrick Green's continued incoherence, obvious medical issues, his lack of food or water for days were obvious to the Individual Defendants.  Yet, each Defendant consciously and deliberately chose not to ensure that Patrick Green received proper and adequate medical care, food and water.  Defendants, through these actions, proximately caused the deprivation of Patrick Green's rights to due process of law and rights to be free from cruel and unusual punishment subjecting him to periods of incarceration under unduly painful, horrifying and dangerous conditions resulting in his death.  The actions of the Defendants were singularly, or in combination, a legal cause of death to Patrick Green.

96.   Patrick Green was in need of medical attention and treatment for his serious medical condition, as was well known to the Defendants.  Nonetheless, Defendants willfully and maliciously refused to summon appropriate medical aid for Patrick Green.

97.   At all times material hereto, as represented by Harris County, the Individual Defendants with the exception of John M. Lu, M.D. were employees of Harris County, Texas, and within the course and scope of their employment and in furtherance of the duties of their offices or employment.  John M. Lu,

M.D. was in the course and scope of his employment with Staff Care, Inc., a wholly owned subsidiary of AMN Healthcare Services.

98.    Defendants clearly breached their constitutional duty to tend to basic human needs of persons within their charge, acting with deliberate indifference and subjective recklessness to the clear needs of Patrick Green, of which they had knowledge. Even the other inmates, laypersons, easily recognized the necessity for a doctor's attention.   The Individual Defendants had full knowledge of Patrick Green's altered mental and physical status.  However, the Individual Defendants made a conscious decision, pursuant to the policies, practices or customs of the County and/or their inadequate training to leave Patrick Green in his bunk, unmoving, not eating or drinking without providing him the necessary medical care or food and water as required under the United States Constitution. Given a) Patrick Green's inability to go to work despite never before missing work, b) his repeated requests both oral and written to see someone at the Clinic at 701 San Jacinto, and c) the statements of the inmates in his cell regarding Patrick Green's complaints, inactions. actions and appearance the County and the Individual Defendants deliberately disregarded the serious risk of medical harm.    Further, the County and the Individual Defendants deliberately failed to take the requisite steps to determine the true cause of Patrick Green's symptoms.

99.   **No qualified immunity**:   County employees can be entitled to qualified immunity to their individual liability, but this immunity is waived if the complainant shows that:

a.     the individual's acts deprived the party of constitutional rights under color of law;

b.     the deprived rights were clearly established and constitutional rights which existed at the time of the acts, and

c.     such acts were not objectively reasonable under the circumstances, that is, no reasonable official could have believed at the time that the conduct was lawful.

100.   The Individual Defendants acting under color of state law, by enforcing and failing to enforce Harris County policies and procedures for incarceration of persons by failing to provide adequate medical assistance during his incarceration and/or by their failure to properly train as to the handling of incarcerated persons, deprived Patrick Green of his civil liberties without due process of law.   No reasonable official in the Defendants' positions could have believed that failure to seek medical treatment for an individual who lay in his bunk refusing food and water was constitutional.   After at least two days passed, Individual Defendants Warner Dean Ervin and Malloy each noted his physical condition including a change in mental status

and still made a decision not to seek medical care for him in a timely manner.   Neither Individual Defendants Harris County Detention Officer Warner Dean Ervin, Harris County Detention Officer Malloy Harris County Detention Officer Jennifer Wagner, Harris County Detention Officer Maria Rodriguez, Harris County Detention Officer Martinez, Harris County Detention Officer Jose M. Sanchez, Harris County Detention Officer C. Maltez and Harris County Detention Officer M. Vela sought qualified medical assessment despite obvious signs of medical need.   The health-professional defendants did not seek timely input from a physician despite indicative signs of infection and meningitis.   Adequate medical care does not mean ignoring someone until their condition improves.   In fact, such treatment was the exact opposite of adequate medical care.   The acts of the Individual Defendants, when viewed objectively, were deliberately indifferent and unreasonable under the circumstances.   Therefore, qualified immunity is waived in this case.

101.   The Individual Defendants involved in this case, acting under color of law, were deliberately indifferent to the excessive risk to Patrick Green's health and safety in their acts, or failures to act.   Such acts violated and deprived Patrick Green's clearly established constitutional rights.

102.   The acts of the County and Individual Defendants clearly violated established statutory or constitutional rights of which a reasonable person would have known, including the constitutional rights of life and liberty, and against cruel and unusual punishment, afforded by the Fourteenth Amendment of the United States Constitution.

103.   The acts of Defendants were so obviously and grossly wrong, that only a plainly incompetent entity or officer, or one who was knowingly violating the law, would have performed such acts or omissions, and therefore, Defendants are liable to Plaintiffs for the damages caused by their actions.

104.   Thus, the County's policy of overlooking proper training, including training on medical rights and procedures for jail inmates was inherent.   A city/county may be held liable for its failure to train a single police officer when the officer's acts were so egregious that the city/county should have had a clear warning that the particular officer posed a danger to citizens. See *Pineda v. City of Houston*, 124 F.Supp. 2d 1057, 1068 (S.D. Tex. 2000).

105.   The aforementioned acts resulted in the delay and ultimately failure to provide any of the necessary medical treatment to Patrick Green, which in turn proximately caused his death.

106.   In the alternative, all of the above actions and inactions of the individuals and medical care providers above constitute negligence rise to the level of gross negligence.

## NEGLIGENT HIRING, SUPERVISION, RETENTION, VICARIOUS LIABILITY
### (Against Staff Care, Inc.)

107. Plaintiffs re-allege and incorporate all allegations of this Complaint as if fully set forth herein.

108. Upon information provided by Harris County, Defendant Dr. Lu was an employee of Defendant Staff Care, Inc. by which his medical services were provided to Harris County by contract from Staff Care, Inc. and his obligations were to provide medical care to inmates and detainees at the Harris County Jail as well as to direct other medical staff.

109. Dr. Lu had a series of adverse medical outcomes from his patients on information and belief before his hire, and most certainly after his hire and assignment to Harris County.

110. At all times, Staff Care, Inc. either knew, should have known or had an obligation to find out that Dr. Lu was not performing as a reasonably prudent physician and was otherwise a threat to his patients and was improperly directing staff including medical staff subject to his control.

111. Such failures in hiring, supervision and retention were below the standard of care and proximately and factually were a cause of the harm to Patrick Green and his ultimate death.

112.   Staff Care, Inc. is also vicariously liable for the actions and inactions of Dr. Lu, any other medical care providers at the Harris County Jail for which Dr. Lu was responsible for supervision, and any other medical providers at the Harris County Jail, that led to the harm suffered by Patrick Green and the other Plaintiffs listed here.

113.   Alternatively, if Dr. Lu was acting in *locum tenens*, he acted under the express, implied or apparent authority or agency of Staff Care, Inc. for which Staff Care, Inc. would be liable.

114.   Further alternatively, Staff Care, Inc. was acting as a joint employer and shared the control and supervision of Dr. Lu, and is thereby liable for the injury-causing actions and inactions of Dr. Lu.

## DAMAGES

115.   Based upon the operative facts pleaded above, such acts and omissions rise to the level of deliberate indifference and conscious indifference constituting a violation of the Fourth, Eighth and Fourteenth Amendments of the Constitution of the United States for which Plaintiffs seek recovery.

116.   Each and every, all and singular of the foregoing acts and omissions, on the part of Defendants, taken separately and/or collectively, jointly and severally, constitute a direct and proximate cause of the injuries and damages set forth herein.  As a direct, proximate, and foreseeable result of

Defendants' unlawful conduct, Plaintiffs have suffered, and will continue to suffer damages in an amount to be proved at trial.

117.    As a direct, proximate, and foreseeable result of Defendants' unlawful conduct, Plaintiffs have suffered, and will continue to suffer, generally loss of earning capacity, loss of earnings, loss of benefits, loss of inheritance, physical, mental, and psychological damages in the form of extreme and enduring worry, grief, suffering, pain, humiliation, embarrassment, mental anguish, and emotional distress in amounts within the jurisdictional limits of this Court, to be proved at trial.

118.    In acting as alleged above, Defendants acted maliciously, fraudulently, despicably, and oppressively, with the wrongful intention of injuring Plaintiffs, from an improper motive amounting to malice, and in conscious disregard of Plaintiffs' rights.   Plaintiffs are entitled to recover punitive damages from Defendants in amounts to be proved at trial.

119.    Non-governmental Defendants are vicariously liable for their employees, supervisors, officials, representatives and all those acting in concert with them.

120.    Patrick Green suffered immensely before his death and damages are sought for the Estate of Patrick Green under the Texas wrongful death and survivor statutes as applied through 42 U.S.C. Section 1983.

121.   The Defendants took such acts and omissions in a way that not only shocks the conscience but satisfies the criteria for punitive damages as set out by law and as contemplated by 42 USC §1983.

122.   Plaintiffs are entitled to reasonable attorneys' fees, expenses and costs of suit as provided for by 42 U.S.C. § 1988(b).  Plaintiffs request that the Court and jury award their attorneys' fees and expenses.

## JURY DEMAND

123.   Pursuant to Federal Rule of Civil Procedure 38(b) Plaintiffs demand a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs requests that the Court:

A.   Enter judgment and award damages for Plaintiffs against Defendants, jointly and severally;

B.   Find that Plaintiff is the prevailing party in this case and award attorneys' fees and costs and all litigation expenses, pursuant to federal and state law, as noted against defendants, jointly and severally;

C.   Award Pre- and post-judgement interest;

D.   Award Punitive damages against all individually named and non-governmental defendants and for Plaintiff; and

E.   Award costs of court;

F.     Grant such other and further relief as appears reasonable and just, to which,

Plaintiffs shows themselves entitled.

Respectfully submitted,

*/s/ Randall L. Kallinen*

_____

Randall L. Kallinen
TBN: 00790995
attorneykallinen@aol.com

THE LAW OFFICES OF
RANDALL L. KALLINEN
511 Broadway Street
Houston, Texas 77012
(713) 320-3785

OF COUNSEL:

Charles H. Peckham
TBN:  15704900
cpeckham@pmlaw-us.com

Mary A. Martin
TBN:  00797280
mmartin@pmlaw-us.com

PECKHAM MARTIN, PLLC
Two Bering Park
800 Bering Drive, Suite 220
Houston, Texas 77057
(713) 574-9044
(713) 493-2255 – facsimile